U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2005 JUN 21  A 10: 55

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Victor W. Dahar, Trustee</u>

   v.                                  Civil No. 05-cv-186-JD

<u>Susan W. Jackson, et al.</u>


O R D E R

    Stanley W. Jackson ("the Debtor") filed a voluntary petition in bankruptcy under Chapter 7 on October 15, 2001. The Chapter 7 Trustee, Victor W. Dahar, brought an adversary action against Susan W. Jackson, the Debtor's wife, individually and as trustee of the SWJ Trust I and SWJ Trust II, and Stanley W. Jackson, Jr., the Debtor's son, to set aside certain conveyances of property and receivables as fraudulent transfers under New Hampshire Revised Statutes Annotated ("RSA") § 545-A:4 and 11 U.S.C. § 548(a).[1] The bankruptcy court entered judgment in favor of Dahar in the amount of $260,130.67, finding that certain transfers of property by the Debtor to his wife and the trusts were constructively fraudulent under RSA 545-A:4, I(b)(1)(b).

    Susan Jackson filed an appeal and sought a stay, pending

---

[1] Stanley W. Jackson, Jr., is not a party to this appeal. The bankruptcy court granted summary judgment in favor of Dahar on his claim of fraudulent transfer against Jackson, Jr., before trial, which is not challenged as part of this appeal. <u>Dahar v. Jackson (In re Jackson)</u>, 318 B.R. 5, 9 (Bankr. D.N.H. 2004).

appeal, from the bankruptcy court.  The bankruptcy court denied the stay she requested but gave her a temporary stay to allow her to seek a stay in this court.  When Jackson filed a motion in this court, she was granted a temporary stay to give Dahar an opportunity to respond.  Dahar has now filed a response.

Discussion

Under Rule 8005 of the Federal Rules of Bankruptcy Procedure, if the bankruptcy court denies a party's request for a stay pending appeal, the moving party must show this court why relief was not obtained from the bankruptcy judge.  The moving party must establish "that there is a strong likelihood of success on the merits of [her] appeal; that [s]he will suffer irreparable harm if a stay is not granted; that the harm will outweigh any harm opposing parties will suffer if a stay is granted; and that the public interest would be furthered by the granting of a stay."  In re Power Recovery Sys., Inc., 950 F.2d 798, 804 n.31 (1st Cir. 1991); see also In re Alfaro, 221 B.R. 927, 930 n.6 (B.A.P. 1st Cir. 1998).  When "the denial of a stay will utterly destroy the status quo, irreparably harming the appellants, but the granting of a stay will cause relatively slight harm to appellee, appellants need not show an absolute probability of success in order to be entitled to a stay."

Providence Journal Co. v. F.B.I., 595 F.2d 889, 890 (1st Cir. 1979). Failure to show even one of the factors necessary for a stay justifies denial. Power Recovery Sys., 950 F.2d at 804 n.31.

In her motion for a stay filed with the bankruptcy court, Jackson argued that she was likely to succeed on appeal on the issue that the bankruptcy court erred by considering only the Debtor's business assets under RSA 545-A:4, I(b)(1), and that the other three factors favored granting a stay. The bankruptcy court found that Jackson had not shown a likelihood of success on appeal, for the reasons stated in its opinion of December 7, 2004, but that she had established the other three factors necessary for a stay.

Here, Jackson argues that she is likely to succeed on appeal based on two issues pertaining to RSA 545-A:3,I(b)(1), and relies on the bankruptcy court's findings as to the other factors. In his response, Dahar argues that Jackson has failed to show a likelihood of success on appeal, that she would suffer greater harm than Dahar if the stay were not granted, and that the public interest would be furthered by granting the stay. The parties do not dispute that Jackson would suffer irreparable harm if a stay is not granted.

A. Likelihood of Success

Jackson asserts that she is likely to succeed on the issue of whether the bankruptcy court erred in considering only the Debtor's business assets, rather than including his half interest in his residence as part of his assets. She also contends that the bankruptcy court used the wrong standard in determining that the transfer of certain property constituted constructive fraud under RSA 545-A:4, I(b)(1). Dahar argues that Jackson is not likely to succeed on either issue.

1. Business assets.

RSA 545-A:4, I(b)(1), provides that a transfer made by a debtor is fraudulent as to a creditor "if the debtor made the transfer . . . [w]ithout receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor . . . [w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction." Within the statutory framework, asset "means property of a debtor, but the term does not include: (a) [p]roperty to the extent it is encumbered by a valid lien; (b) [p]roperty to the extent it is generally exempt under nonbankruptcy law." RSA 545-A:1, II.

In assessing whether the Debtor transferred property to his

wife under circumstances that were fraudulent pursuant to RSA 545-A:4, I(b)(1), the bankruptcy judge noted that "[a]lthough the Debtor had significant equity in his residence, as well as other assets, all of the property transferred to the Defendant as part of the estate-planning transfers were business assets." Dahar, 318 B.R. at 20. The judge found that after the transfers the Debtor "had a negative equity of $410,000.00 in his business assets" and did not consider the Debtor's equity in his residence or his other assets to determine his "remaining assets" for purposes of the statutory analysis. Id. It appears, although it is not clear, that the bankruptcy judge considered only business assets in calculating the Debtor's "remaining assets" because the Debtor transferred only business assets to his wife and because she sold those assets to pay the Debtor's business expenses and family expenses. In addition, under the statutory analysis, the Debtor's remaining assets were weighed in relation to his business activity for purposes of determining whether the assets were sufficient. See RSA 545-A:4, I(b)(1).

As Jackson points out, the statutory framework does not limit "remaining assets," as used in RSA 545-A:4, I(b)(1), to business assets. The bankruptcy court order does not clearly explain why all of the Debtors' assets were not considered. Therefore, Jackson states a legal issue that would have a

likelihood of success, if consideration of the Debtor's half interest in his residence would change the outcome in this case.

Dahar, however, argues that even if the bankruptcy judge had considered the Debtor's half interest in his residence as an asset for purposes of RSA 545-A:4, I(b)(1), the outcome would have been the same. When the Debtor filed his bankruptcy schedules, he listed his half interest in his residence at a value of $400,000 and scheduled liens on the residence totaling $662,900.68, which would have left him with an equity interest of $68,550.[2] Dahar v. Jackson, 2003 WL 21991629, at *1 (Bankr. D.N.H. Aug. 6, 2003). The Debtor also claimed a $30,000 homestead exemption. Id. By May of 2003, the liens had increased to $672,518.55, and the Debtor's homestead exemption was $50,000. Id. Dahar obtained a purchase and sale agreement on the house in July of 2002 for $1,225,000. Id.

In the bankruptcy court order denying Jackson's request for a stay, the bankruptcy judge found that the residence had a value of $1,225,000 in 2003, which was likely appreciating. Jackson represented that the residence was encumbered by mortgage liens of approximately $650,000. The bankruptcy judge also noted that

---

[2]The residence is in Hebron, New Hampshire, on twelve acres with 225 feet of frontage on Newfound Lake. Dahar v. Jackson, 2003 WL 21991629, at *1 (Bankr. D.N.H. Aug 6, 2003).

Jackson and the Debtor were entitled to a homestead exemption of $100,000, or $50,000 as to each of their half interests in the property. Based on those figures, the bankruptcy judge found that Jackson's equity interest in the residence appeared to be $375,000. Therefore, the Debtor's equity interest would also appear to have been $375,000 as of December of 2004.

In the December 7, 2004, order, the bankruptcy judge found that after the challenged transfers, the Debtor had a negative equity of $410,000, based on his business assets. If the judge had considered the Debtor's half interest in his residence as an asset, using the value at the time of the petition in 2001, that asset would have had a value of about $38,550.[3] That amount would, even if considered, would still have left the Debtor with a negative equity. Even using the increased value of the Debtor's half interest calculated in December of 2004, $375,000, he would have had a negative equity after the transfers. As a result, the Debtor's remaining assets would have been unreasonably small in relation to the business in which he was

---

[3]The Debtor valued the residence in 2001 at $800,000. The liens totaled $662,900.68. The remaining equity in the residence at that time was $137,099.32. The Debtor's half interest of that amount was $68,549.66, from which his homestead exemption of $30,000 is deducted, leaving $38,549.66. See RSA 545-A:1, II (defining asset to exclude valid liens and exemptions under bankruptcy law).

engaged before and after the challenged transfers, even if the bankruptcy court had considered his interest in his residence as an asset.[4]

Jackson does not provide any developed argument that consideration of the Debtor's half interest in his residence as an asset under RSA 545-A:4, I(b)(1) would have altered the outcome in this case. Therefore, she has not shown a likelihood of success on the issue of whether the bankruptcy judge should have considered the Debtor's half interest in the residence in calculating his remaining assets for purposes of RSA 545-A:4, I(b)(1).

### 2. Standard of proof for constructive fraudulent transfer.

Jackson contends that the bankruptcy judge erred in using a preponderance of the evidence standard rather than the clear and convincing evidence standard for determining whether the challenged properties were conveyed by the Debtor through constructive fraud under RSA 545-A:4, I(b)(1). The bankruptcy judge noted that the New Hampshire Supreme Court has not

---

[4]Nothing in the record presented here indicates that the value of the house was significantly more in 1999 than in 2001, when the Debtor listed its value at $800,000 or in 2003, when its value was set at $1,225,000, or that the mortgage lien was less in 1999 than in 2001 or 2003.

8

addressed the question of what standard of proof applies to fraudulent transfers under RSA 545-A:4, I(b)(1), and that previous cases, prior to enactment of the Uniform Fraudulent Transfer Act ("UFTA") in New Hampshire, had addressed only the standard for proving actual fraud. Dahar, 318 B.R. at 12. Concluding that most states apply a preponderance of the evidence standard under the UFTA when applicable state law does not provide a heightened standard, the bankruptcy judge chose the preponderance standard. Id. at 13.

Before adopting the UFTA in 1987, the New Hampshire legislature enacted the Uniform Fraudulent Conveyances Act in 1919, which included provisions for constructive fraud along with actual fraudulent transfer provisions. See RSA 545:4-7 (repealed 1987, effective January 1, 1988). In construing those provisions, the New Hampshire Supreme Court used the clear and convincing evidence standard only for proof of actual fraudulent intent, as required by RSA 545:6 and 545:7.[5] See, e.g., Chagnon Lumber Co., Inc. v. DeMulder, 121 N.H. 173, 176 (1981); Jenney v. Vining, 120 N.H. 377, 381 (1980). In contrast, the court

---

[5]This court previously used the clear and convincing evidence standard for proof of a fraudulent conveyance under RSA 545:4 where the parties did not raise an issue as to the applicable standard. See United States v. Kattar, 81 F. Supp. 2d 262, 269 (D.N.H. 1999).

reviewed claims of constructive fraud, under RSA 545:4 and 545:5, without reference to any standard. See, e.g., Reen v. Berton, 115 N.H. 424, 426-27 (1975); Zuk v. Hale, 114 N.H. 813, 814-16 (1974); Janson v. Schier, 112 N.H. 329, 330 (1972). Although the court did not articulate a standard for constructive fraud in those cases, it appears to have used a preponderance standard.

Other courts are divided on the question of the applicable standard of proof for setting aside transfers of property based on a constructive fraud theory. See, e.g., Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 628 (4th Cir. 1999) (applying Virginia law requiring clear and convincing evidence of constructive fraud); Nastro v. D'Onofrio, 263 F. Supp. 2d 446, 460 (D. Conn. 2003) (same under Connecticut law); Lippe v. Bairnco Corp., 249 F. Supp. 2d 357, 376 n.6 (S.D.N.Y. 2003) (applying preponderance standard under New York law); In re Dolata, 306 B.R. 97, 117 (Bankr. W.D. Pa. 2004) (applying preponderance standard for constructive fraudulent conveyance under Pennsylvania law and bankruptcy law); In re H. King & Assocs., 295 B.R. 246, 288 (Bankr. N.D. Ill. 2003) (applying preponderance standard under Illinois law); In re TML, Inc., 291 B.R. 400, 436 (Bankr. W.D. Mich. 2003) (applying preponderance standard under Michigan law and citing cases); In re Model Imperial, Inc., 250 B.R. 776, 791 (Bankr. S.D. Fl. 2000)

(applying preponderance standard under Florida law). In the context of bankruptcy law of fraudulent transfer, 11 U.S.C. § 548(a)(1)(B), constructive fraud is shown by a preponderance of the evidence. Peltz v. Hatten, 279 B.R. 710, 735 (D. Del. 2002); Burdick v. Lee, 256 B.R. 837, 840 (D. Mass. 2001); In re Tri-Star Techs. Co., 260 B.R. 319, 323 (Bankr. D. Mass. 2001).

The New Hampshire Supreme Court appears to have limited the clear and convincing standard to proof of actual fraud for purposes of the Uniform Fraudulent Conveyances Act. It seems likely that New Hampshire courts would use the same standards under the UFTA. The reasoning of other courts that have decided that the preponderance standard applies to prove constructive, as opposed to actual, fraud under the UFTA is persuasive, particularly in light of the New Hampshire Supreme Court's older cases and the preponderance standard used for fraudulent transfers under the Bankruptcy Code. Therefore, Jackson has not shown a likelihood that she will prevail on the issue of the standard of proof.

B. Irreparable Harm

If a stay were not imposed, Dahar would be free to enforce the judgment in his favor against Jackson in the amount of $260,130.67. Jackson contends that to satisfy that judgment, she

11

will have to transfer and dispose of assets, including her residence where she has lived for twenty-five years. The bankruptcy court found, and the parties do not dispute, that Jackson would suffer irreparable harm from the loss of her home.

C.  Balancing the Equities and Public Interest

The bankruptcy court found that because Dahar has an attachment on Jackson's residence in the amount of $300,000 that is fully secured by Jackson's equity in the residence, the risk to Dahar's interests that might be caused by a stay is minimal to non-existent. The court also found that the Debtor's creditors and estate were protected by Dahar's attachment on the residence and the likely appreciation in the value of that property so that they would not be harmed by a stay pending appeal.

Dahar argues that the delay that has already occurred with additional delay during the appeal process is prejudicial to the Debtor's creditors and the bankruptcy estate. The bankruptcy court found that the attachment on Jackson's residence obviated virtually any risk of losing the security for the judgment. Dahar has not shown that the passage of time will otherwise cause harm to the estate or to any of the creditors. Therefore, the bankruptcy court's reasoning and conclusion on the relative harms and public interest are persuasive.

D.  Irreparable Harm to Jackson and Slight Harm to Others

As noted above, the First Circuit has suggested that in unusual circumstances, where "the denial of a stay will utterly destroy the status quo, irreparably harming appellants, but the granting of a stay will cause relatively slight harm to appellee, appellants need not show an absolute probability of success in order to be entitled to a stay." See Providence Journal Co., 595 F.2d at 890. Instead, the appellant may be entitled to a stay if he or she presents serious legal questions to be resolved on appeal. Id. Although this case would likely meet the unusual circumstances necessary to invoke the more lenient standard, Jackson has not met her burden of showing that serious legal questions remain to be answered.

In seeking a stay from this court, after the bankruptcy court has denied her request, Jackson was obligated to show why she did not obtain relief from the bankruptcy court. Fed. R. Bankr. P. 8005. Jackson provided no developed argument in support of the issues she claims on appeal nor did she cite a single case in support of her theory on either issue.[6] Apparently, Jackson misunderstood her burden to require her only

---

[6] Jackson's theory that the bankruptcy court had an "inherent conflict" in concluding that she was not likely to succeed on the merits of her claims on appeal is not supported by citation to any authority and is unpersuasive.

13

to state legal issues rather than present issues through a properly supported argument. Based on the analysis provided above, Jackson is not likely to succeed on the issues she raises, even under the more relaxed standard.

Because Jackson has failed to show that she is likely to succeed on the merits of her appeal, she is not entitled to a stay. Therefore her request is denied.

## Conclusion

For the foregoing reasons, the appellant's request for a stay pending appeal (document no. 4) is denied. The temporary stay imposed by the court on June 1, 2005, is dissolved.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

June 21, 2005

cc: Richard Thorner, Esq.
    Donald C. Crandlemire, Esq.
    John R. Michels, Esq.
    Thomas J. Pappas, Esq.