UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Victor W. Dahar, Trustee</u>

    v.                                  Civil No. 05-cv-186-JD

<u>Susan W. Jackson, et al.</u>

<u>O R D E R</u>

Susan W. Jackson appeals the bankruptcy court's decision in favor of the trustee, Victor W. Dahar, that was issued in an adversary proceeding brought by Trustee Dahar in Stanley W. Jackson's Chapter 7 bankruptcy case. The bankruptcy court found in a Memorandum Opinion ("Mem. Op.") that certain transfers of property by the Debtor, Stanley Jackson, to his wife, Susan Jackson, and others were constructively fraudulent under New Hampshire Revised Statutes Annotated ("RSA") 545-A:4, I(b)(1) and entered judgment in favor of Dahar in the amount of $260,130.67. Susan Jackson raises four issues on appeal, two of which this court previously addressed, and resolved against her, in the context of her motion for a stay pending appeal.

<u>Discussion</u>

On appeal, Jackson contends that the bankruptcy court misinterpreted RSA 545-A:4,I(b)(1), erred in finding that the debtor was engaged in business and that his remaining assets were

unreasonably small, erred in using a preponderance of the evidence standard for proving constructive fraud under RSA 545-A:4,I(b)(1), and abused its discretion in limiting the time period within which to apply the equitable adjustment.  In reviewing a decision of the bankruptcy court, this court "may not set aside findings of fact unless they are clearly erroneous, giving due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses."  Palmacci v. Umpierrez, 121 F.3d 781, 785 (1st Cir. 1997) (internal quotation marks omitted).  Legal conclusions are reviewed de novo.  Id.

I.  Misinterpretation of RSA 545-A:4,I(b)(1)

Jackson argues that the bankruptcy court misinterpreted RSA 545-A:4,I(b)(1) as being limited to consideration of business assets.  That issue was addressed in both the court's order denying Jackson's motion for a stay and the order in response to Jackson's motion for reconsideration.  The court concluded as follows:

> The bankruptcy judge evaluated the Debtor's business assets and found that he had transferred all of his business assets with equity to Jackson while retaining only properties with negative equity.  Contrary to Jackson's claim and the court's initial impression, however, the bankruptcy judge did not base his analysis of the transferred properties under RSA 545-A:4, I(b)(1), on the relative equities in the properties without considering the value of other assets retained

2

>       by the Debtor.  Instead, the bankruptcy judge concluded
>       that the Debtor could no longer pay his business debts
>       and support his family from his business, after he
>       transferred the properties to Jackson, and for that
>       reason the transfers had left him with unreasonably
>       small remaining assets in relation to his business,
>       constituting fraudulent transfer under RSA 545-
>       A:4,I(b)(1).

Order, July 21, 2005, at 2.  Jackson offers nothing in her brief on appeal that undermines the court's previous conclusion with respect to the bankruptcy court's interpretation of RSA 545-A:4,I(b)(1).

II.  <u>Engaged in Business and Remaining Assets</u>

A debtor makes a constructively fraudulent transfer under RSA 545-A:4 if at the time of the transfer he "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction."  RSA 545-A:4,I(b)(1). The bankruptcy court found that the Debtor had "engaged in the business of buying and selling, and developing real estate for the last thirty years."  Mem. Op. at 16.  That court further found, based on the evidence presented, that the Debtor had no means of paying his business debts and supporting himself and his family without continuing to engage in his business.  The court concluded:  "The Debtor may have intended to reduce his business

activity, but he intended to continue to derive income, pay his business debts, and support his family from the sale of real estate inventory." Mem. Op. at 17. The court further concluded, based on Jackson's sale of business assets that had been transferred to her and her use of those proceeds to pay the Debtor's business debts and to support the family, that the Debtor's remaining assets were unreasonably small in relation to his continuing business.

### A. Engaged in Business

Jackson argues that the Debtor was not engaged in business at the time the properties were transferred to her or afterwards. She contends that the Debtor's medical problems precluded him from conducting his business, which she describes as purchasing and developing additional real estate properties. She asserts that the Debtor was retired and was merely living off the assets he had accumulated in the course of his business. Jackson has not shown that the bankruptcy court's finding that the Debtor continued to be engaged in the business of selling real estate after the transfer of the properties to Jackson is clearly erroneous.

B. <u>Unreasonably Small</u>

The second prong of the analysis under RSA 545-A:4,I(b)(1) is whether the Debtor's remaining assets were unreasonably small in relation to his business. The bankruptcy court listed the Debtor's business assets, excluding the Debtor's interest in his home, with their values, liens, and equities, and noted which were transferred to Jackson. The bankruptcy court also noted that as a result of the transfers of property to Jackson, the Debtor had negative equity in his remaining business assets while the assets transferred to Jackson had significant positive equity. The court further noted that within a year after the transfers, Jackson had sold nearly all of the properties that had been transferred to her and that the proceeds were used for the most part to pay expenses that had previously been paid by the Debtor from his business income. The bankruptcy court concluded that the Debtor's remaining assets were unreasonably small in relation to his business because he could not pay the expenses of his business after the transfers.

Similar to the issue of whether the bankruptcy court misinterpreted RSA 545-A:4,I(b)(1), Jackson argues that the court erroneously focused on the Debtor's business assets in the absence of his other considerable assets in finding that his remaining assets were unreasonably small in relation to his

business.  As the court has previously explained, Jackson would appear to be correct if the bankruptcy court had based its decision on the value of the Debtor's business assets without considering his other assets.  That, however, was not the bankruptcy court's decision.  The bankruptcy court held that the remaining assets were unreasonably small after the transfers because the Debtor no longer paid his business expenses and his family's living expenses which, instead, were being paid by Jackson from the proceeds of selling the business properties that were transferred to her.[1]  Therefore, the value of the assets the Debtor retained was irrelevant to the bankruptcy court's conclusion that those assets were unreasonably small.

III.  Burden of Proof

Jackson contends that the bankruptcy court erred in ruling that Dahar could prove constructive fraudulent transfer by a preponderance of the evidence rather than by clear and convincing evidence.  This court addressed the burden of proof issue in the context of the court's order denying Jackson's motion for a stay

---

[1] To the extent Jackson raises a new issue in her reply, challenging the bankruptcy court's consideration of whether the Debtor was able to support his family, that issue was not properly raised and is deemed to have been waived.  See Indian Motocycle Assocs. III Ltd. P'ship v. Mass. Housing Fin. Auth., 66 F.3d 1246, 1253 n.12 (1st Cir. 1995).

pending appeal.  There, the court held that the reasoning of other courts that have decided that the preponderance standard applies to prove constructive, as opposed to actual, fraud under the Uniform Fraudulent Transfers Act is persuasive, particularly in light of the New Hampshire Supreme Court's older cases and the preponderance standard used for fraudulent transfers under the Bankruptcy Code.  Jackson provides no basis for the court to conclude otherwise here.

IV.  Equitable Adjustment

RSA 545-A:8, III provides that a judgment for a fraudulent transfer based on the value of the transferred assets must be equal to that value at the time of transfer, "subject to adjustment as the equities may require."  Because the transferred properties had been sold, the judgment in the fraudulent conveyance action was for an amount equal to their value at the time of the transfers, which was $585,500.  The bankruptcy court then adjusted that amount by $325,369.33, which was the amount the court determined Jackson had spent during the first year after the transfers to pay the Debtor's business debts and the family's living expenses.  The bankruptcy court characterized the equitable adjustment as necessary to prevent the trustee from receiving a windfall.

Jackson contends that the one-year limitation on the adjustment improperly omitted the expenditures she made on the Debtor's behalf after the one year period.  She also argues that she is due a $30,000 credit because of transactions with the Debtor, involving one of the subject properties, that deprived her of the value of that property.

The bankruptcy court chose the one-year period to reflect the time the Debtor was winding down his business after the properties were transferred to Jackson.  Acknowledging that the time limit was to some extent arbitrary, the court explained that the one-year period was used because after that time the sales of the subject properties occurred over significantly longer intervals, which suggested that the business operations had effectively concluded.  After the business stopped operating, the properties became Jackson's personal assets instead of business assets that would be subject to equitable considerations.  With respect to the issue of the $30,000 credit, the bankruptcy court ruled that Jackson misunderstood the purpose of the equitable adjustment, which is to prevent a windfall to the trustee but is not intended to compensate the transferee.

The bankruptcy court's equitable adjustment was not based on clearly erroneous facts or on an erroneous legal ruling.

Conclusion

For the foregoing reasons, the judgment of the bankruptcy court is AFFIRMED.

SO ORDERED.

*[signature]*
Joseph A. DiClerico, Jr.
United States District Judge

October 6, 2005

cc: John R. Michels, Esquire
    Thomas J. Pappas, Esquire
    Richard Thorner, Esquire
    USBC-NH, Clerk